IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | )    Cr. No. 18-03495 JCH |
| DOUGLAS D. SMITH, | ) ) ) |
| Defendant. | ) |

<u>THE UNITED STATES' SENTENCING MEMORANDUM, MOTION FOR UPWARD VARIANCE/DEPARTURE AND RESPONSE TO DEFENDANT'S PSR OBJECTIONS</u>

The United States hereby submits its sentencing memorandum and motion for upward departure and its response to Defendant's Objection to the presentence report (PSR) (Doc. 215). The United States is requesting 60 months of imprisonment, followed by three years of supervised release, restitution for funeral expenses, and a $100 special penalty assessment.

PROCEDURAL BACKGROUND

On October 23, 2018, a federal grand jury returned an indictment against Defendant charging him with Second Degree Murder, in violation of 18 U.S.C. §§ 1152 and 1111. Doc. 24. Defendant was found guilty of the lesser included offense of involuntary manslaughter on June 18, 2021, after a five day trial.

On September 30, 2021, the United States Probation office submitted a PSR, calculating Defendant's total offense level to be 18 and his criminal history category to be I, resulting in a guideline imprisonment range of 27 to 33 months of incarceration. PSR ¶ 54, Doc. 207. The United States reviewed the PSR and filed its objections (Doc. 209) requesting several corrections and a two-level enhancement under enhancement for obstruction pursuant to U.S.S.G. §3C1.1. If the Court were to grant the United States's request for a two-level enhancement for obstruction,

Defendant's total offense level would be 20 and his total guideline range would be 33 to 41 months. Assuming this guideline range, the United States is requesting an upward variance and/or departure of 19 months for a total sentence of 60 months of incarceration.

RESPONSE TO DEFENDANT'S PSR OBJECTIONS (DOC. 215)

The United States agrees the count of conviction was involuntary manslaughter and not voluntary manslaughter. The United States also agrees that the maximum term of imprisonment is 8 years and not 15 years. The United States does not object to Defendant's release status reflecting his arrest on May 5, 2018 by the Espanola Police Department, until his arrest later by federal authorities on May 8, 2018.

The United States submits the base offense level of 18 was correctly determined in the PSR under §2A1.4(2)(B).  Defendant seeks a lower offense level. Negligent homicide is not what this Defendant committed, it was reckless homicide. Defendant shot multiple times in the direction of Jane Doe, in the dark with no lights shining in the area. After Jane Doe ran away from Defendant, he intentionally continued to shoot through trees and bushes ultimately landing a bullet in her left temple. Defendant was not shooting up in the air, rather Defendant was shooting at the height of Jane Doe's head, which was approximately five feet. There was no justification for Defendant to shoot in her direction at all, let alone multiple times, at a height to inflict serious harm as she ran away. Defendant did not claim self-defense. PSR ¶ 14. Defendant testified that Jane Doe was "eyeballing" (PSR ¶ 9) him and he did not know whether she had a gun or if she was breaking into his trailer. The jury completely rejected Defendant's claims when they returned a verdict of involuntary manslaughter. A criminally negligent act is, for example, leaving a loaded gun around an unsupervised child, swiping at a loaded weapon in another person's hand, or leaving a child unattended in a hot car. "Reckless" as defined in the United

States Sentencing Guidelines, "means a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation. U.S.S.G. §2A1.4 Application note 1.Defendant's conduct meets this standard and the PSR contains the correct base offense level.

Defendant is not entitled to acceptance of responsibility. U.S.S.G. §3E1.1 allows a district court to reduce a defendant's offense level by two levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. §3E1.1(a). But a defendant's decision to exercise his constitutional right to trial will commonly render him ineligible for a §3E1.1 reduction. *See United States v. Salazar-Samaniega*, 361 F.3d 1271, 1280-81 (10th Cir. 2004). As the commentary to §3E1.1 relates, [t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. *Id*. at 1281. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

In *United States v. Tom*, 494 F.3d 1277, 1281 (10th Cir. 2007), the government argued that Tom, by proceeding to trial and claiming he lacked the requisite *mens rea* for guilt,

contested the factual basis of the charge against him and thus is ineligible for the §3E1.1 reduction, regardless of whether Tom admitted his participation in the events leading to his son's death. The Tenth Circuit agreed. This is precisely what Defendant is attempting to do here on the eve of sentencing. When considering the calculation of a Guidelines sentencing range, "[w]e review legal questions de novo and we review any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Sims*, 428 F.3d 945, 960 (10th Cir. 2005). "Determination of acceptance of responsibility is a question of fact reviewed under a clearly erroneous standard." *United States v. Gauvin*, 173 F.3d 798, 805 (10th Cir. 1999); *see Salazar-Samaniega,* 361 F.3d at 1282. This Court should not award Defendant any points for acceptance of responsibility. Defendant contested the requisite *mens rea* of the offense. Despite this deferential review, the Tenth Circuit makes clear that that acceptance of responsibility adjustments after trial are very rare. Defendant cites no legal authority for his position, that is because it does not exist.

    Finally, Defendant complains about how the facts of the case are characterized in the PSR. Then, he proceeds to characterize them in a manner that makes him appear less culpable, not surprisingly. The United States submits that we can never know exactly what happened because only two people were involved and Defendant was the only survivor. His testimony at trial confirmed he was not acting in self-defense by his own admission. As the Court is aware, it was dark outside. Defendant fired his weapon without provocation and fired it multiple times in the direction of Jane Doe as she was attempting to leave the motel property. The Court also saw photos of Defendant's fenced-in backyard, which was never breached by Jane Doe, according to Defendant's testimony. Multiple shell casings were found where Defendant claimed to be standing. Jane Doe was shot in her left temple. Defendant's reckless conduct cannot be

mischaracterized. In his own objections to the PSR, Defendant states: "he fired once, the person took off running, and wait he waited until *he thought the person had left before he fired again.*" Doc. 215 at 5. This Court saw the photos of the foliage, buildings and trees that were between Jane Doe and Defendant. To shoot through trees (as fast as he could), and other obstructions, knowing a human was present means the Defendant was aware of the risk created by his conduct and the risk was of such a nature and degree, that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation. In short, Defendant's criminal conduct was incredibly reckless and dangerous.

ARGUMENT

I. **Defendant's Appropriate Guideline Range**

A district court is tasked with "begin[ning] all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007) (citation omitted). The United States objected to the PSR (Doc. 207) disclosed on September 30, 2021. Specifically, the PSR does not recommend an enhancement for obstruction of justice, which is supported by the Defendant's testimony at trial. The United States respectfully disagrees with the PSR and incorporates its arguments in Docs. 209 and 209-1 by reference.

II. **Request for an Upward Variance**

Because the guidelines are advisory and only one factor to be considered by the Court in determining an appropriate sentence under 18 USC § 3553(a), this Court should find that an upward variance is justified in this case. "Although the Sentencing Guidelines are now only advisory, they still "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007); *see United States v. Booker*, 543 U.S. 220, 246–58 (2005).

A.   The Nature and Circumstances of the Offense

The nature and circumstances of Defendant's criminal conduct compels an upward variance. Defendant's conduct was so dangerous that it rises to the level of egregious. Defendant wielded a loaded firearm with extraordinary recklessness. Defendant did not even know if he was shooting at a man or a woman. PSR ¶ 9. In fact, he initially thought he killed his tenant's granddaughter. PSR ¶ 11. Defendant did not shoot once, or even twice in the direction of Jane Doe. No, he continued to shoot *four times*. Defendant testified at trial that he was firing faster than I ever fired before (Tr. 54:7-8). He did not call out to warn anyone before he fired. He did not shoot into the ground or the air. PSR ¶ 14. Defendant told law enforcement that he did not shoot into the ground because he was not sure where the bullets would go. So, Defendant knows bullets are dangerous.

In spite of this knowledge, Defendant shot four bullets at the height of a person, in the dark and in the direction he saw a person running. During trial, Defendant testified that he could not see in the dark (Tr. 72:8). That is not advised to shoot in the dark (Tr. 73:12-13). Yet, he fired as fast as he could in the direction of the person he saw. Defendant lives on a busy highway near a KFC restaurant (PSR ¶ 12), Defendant had tenants at the motel, and yet, this Defendant choose to shoot a loaded firearm as fast as he could in the dark. This is clearly dangerous criminal conduct that shows little regard for human life.

Defendant demonstrated through his trial testimony that he confronted and even chased one other trespasser. PSR ¶ 13. In the instant offense, Defendant admitted at trial that he was not acting in self-defense (Tr. 78:1-2). Instead of letting trespassers leave the motel property, he engaged them (Tr. 68:1-3). Defendant referred to himself as the motel cop and testified that he patrolled his property. PSR ¶ 13. A month prior to Defendant killing Jane Doe, Defendant shot at

6

another trespasser near the trailer. *Id*. That man took off running and Defendant told law enforcement that he went, "pow, pow, pow, again - just like I did with this girl." *Id*. Defendant's criminal conduct in this case is not aberrant. He has done this before. Defendant engages in gun violence when dealing with motel trespassers. It does not matter to him if people were trying to run away. He keeps shooting over and over.

In this case, Jane Doe did not approach Defendant, she did not have a weapon, she was not trying to get into his house (PSR ¶ 9), instead, she was behind a fence (*id*.), some 30 to 40 feet away (PSR ¶ 7). Defendant drew out the directionality of his gunfire for law enforcement (PSR ¶ 7). Defendant's hand is moving in a counterclockwise direction as he intentionally pulls the trigger four times. This is deadly and extraordinarily reckless criminal conduct that goes beyond the ordinary conduct proscribed by base offense level 18 for involuntary manslaughter. *See United States v. Martinez-Armestica*, 846 F.3d 436, 447 (1st Cir. 2017) (affirming variance where defendant's conduct "went beyond the ordinary conduct proscribed by the statute" to include "repeated, threatening use of firearms" and "[r]ather than simply brandishing a weapon, [defendant] pointed the gun directly at one of the carjacking victims, holding it against her head."). Defendant's criminal conduct warrants a sentence of 60 months of incarceration.

      B.      <u>The Need for the Sentence Imposed to Promote Respect for the Law, Provide Just Punishment, Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant</u>

This Court can also vary upwards under § 3553(a)(2) based on the need to protect the public from further crimes of Defendant. Defendant's criminal conduct was senseless. Jane Doe did not need to die. Defendant could have killed anyone walking through the motel parking lot that night. Notably, at the time of the offense, Defendant did post any signs indicating the motel was private property, nor did he have any gates up. PSR ¶ 12. The motel was open to pedestrian

7

traffic. *Id*. Any human being walking to any of the adjacent busy highway, or several businesses could have walked through the motel parking lot and potentially been shot and killed. The arbitrary and senseless nature of this crime is concerning. Gun violence is a serious problem, but senseless and arbitrary gun violence further endangers the whole community. It also emphasizes how dangerous the Defendant is and how serious his conduct was. Tragically, Jane Doe will never return home. Her sister writes that, "There is no excuse to aimlessly fire a weapon in the middle of a town and get away with it. It could have been anyone's sister, mom, or child. But sadly it was mine." PSR ¶ 18.

A sentence of 60 months would reflect the seriousness of the offense and provide adequate deterrence. Deterrence includes both general deterrence and specific deterrence. *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006). While general deterrence's goal is to "deter others from committing the same crime by demonstrating its disadvantageous consequences," specific deterrence's goal is "to incapacitate the wrongdoer, so as to protect society from further criminal activity." *United States v. Irey*, 612 F.3d 1160, 1227 (11th Cir. 2010). An overly lenient sentence "signals to others that it is not a big deal to repeatedly defy United States' laws." *United States v. Corchado-Aguirre,* 629 Fed.Appx. 837, 840 (10th Cir. 2015). "It is the most serious kind of crime one can have to take the life of one human being…" *United States v. Gibbs*, 237 Fed. Appx. 550, 563 (11th Cir. 2007).

In this case, an upward variance reflects the seriousness of the offense and provides adequate deterrence. As a general deterrent, 60 months would demonstrate to others the disadvantageous consequences of using a firearm in such an incredibly dangerous and senseless manner. As a specific deterrent, Defendant will be deterred from similar criminality for at least the duration of his imprisonment. Furthermore, given that Defendant's conduct resulted in the

death of a human being, additional imprisonment is warranted to recognize the seriousness of his criminal conduct.

      C.     <u>The Sentencing Guidelines for the Applicable Category of Offense Committed by the Applicable Category of Defendant</u>

A sentence of 60 months' imprisonment is reasonable considering the harm Defendant caused. The Supreme Court recognized that ordinarily the guidelines will "reflect a rough approximation of sentences that might achieve 3553(a)'s objectives." *Kimbrough v. United States,* 552 U.S. 85, 109 (2007). However, there is no requirement a court find "extraordinary circumstances" to warrant a variance from the guidelines. *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008). Merely, a court must provide "compelling reasons" for divergence from the advisory guideline range. *Mateo*, 471 F.3d at 1169. A minor variance need be supported by less justification than a major variance. *Gall v. United States*, 552 U.S. 38, 50 (2007). Variances of much higher than 19 months are frequently upheld as reasonable. *See United States v. Smart*, 518 F.3d 800, 810 (10th Cir. 2008) (finding a variance of forty-eight months from guidelines reasonably justified).

Defendant has caused significant harm to Jane Doe and her family. Jane Doe was a young woman, who also had loving family who are all heart-broken and still dealing with the loss of their mother and sister. Jane Doe's sister explains that Jane Doe "was compassionate, giving, and loving. Her and my son Nicholas shared a special bond and they both lost their lives due to unnecessary gun violence. I want everyone to know what an amazing sister, friend, mother, and Auntie she is and always will be." PSR ¶ 18. They are experiencing the day-to-day loss of Jane Doe, who loved them dearly. Jane Doe's children and experiencing the emotional and physical consequences of grief. They will never see their mother again. Jane Doe's sister wishes to address the Court at sentencing. Jane Doe's sister has been involved with this case from the onset

9

and has expressed how much she misses her sister. Jane Doe family listened to the trial everyday online, given the pandemic restrictions. Jane Doe's family has been incredibly patient with the justice system. Even in waiting for Defendant's sentencing hearing, Jane Doe's family has been diligent and steadfast. Defendant's criminal conduct has caused significant harm to Jane Doe and her family. His crime warrants a 60 month sentence.

As part of restitution, the United States is also requesting $1,800 in funeral expenses. Under the Victim and Witness Protection Act, restitution may be recovered for "necessary funeral and related services." 18 U.S.C. § 3663(b)(3).

### III.    Request for an Upward Departure

The United States additionally submits that a sentence of 60 months of incarceration is also warranted as a departure. In specifically reviewing upward departures, a four-part test, examining: (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable. *Whiteskunk,* 162 F.3d at 1249.

The factual circumstances described above support a departure in this case. Defendant's incredibly reckless use of a dangerous firearm warrants an upward departure under §5K2.6, which provides for an upward departure if "a weapon or dangerous instrumentality was used or possessed in the commission of the offense."( USSG §5K2.6; *see also, e.g., United States v. Peeples*, 879 F.3d 282, 289 (8th Cir. 2018) (affirming upward departure under §5K2.6 and enhancement under §2K2.1(b)(6) where defendant fired shot into floor of home and into apartment below "[b]ecause the enhancements account for two distinct harms"); *United States v.*

*Bond,* 22 F.3d 662, 673 (6th Cir. 1994) ("[R]obbers discharge firearms during robberies specifically to frighten the victims, to ensure cooperation with their demands, and to facilitate escape; the factors articulated by the district court do not deviate substantially from that norm.") The increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others.

The record sufficiently supports the factual basis underlying an upward departure in this case. Defendant wielded and discharged a dangerous firearm and "would almost always go outside carrying a pistol" (Tr. 44:21). Defendant testified he would use it to scare people off by shooting at the ground and making noise (Tr. 45:1-7). But Defendant's trial testimony is inconsistent with prior statements to law enforcement, and inconsistent with what Defendant did when he chambered his firearm and pointed it in the direction of Jane Doe as she ran for her life. There was no accidental discharge. Defendant did not shoot into the air, and he did not shoot into the ground. He shot just like he had before the month prior, "pow, pow, pow – again, just like I did with his girl," but this time he shot and killed Jane Doe. Notably, after killing Jane Doe, Defendant attempted to reload and continued to go to the front of the motel and shoved the clip into the gun and explained, "whatever happens, happens." PSR ¶ 11. Defendant additionally asserted that he was not acting in self-defense at trial. Instead, Defendant freely wielded and discharged his dangerous weapon when he engaged motel trespassers on at least two separate occasions.

This case is outside of the heartland of other involuntary manslaughter cases because there is no enhancement for firearms in §2A1.4. As such, Defendant's applicable guideline range does not contemplate the use of a weapon or dangerous instrumentality. The higher involuntary manslaughter guideline base level of 22 under §2A1.4(B) is used when the offense involved the

reckless operation of a means of transportation. This four-level enhancement is assessed in homicide cases involving a vehicle. Arguably because a vehicle is a dangerous weapon that can endanger others when reckless operated. Similarly, the dangerousness of the Defendant's firearm should also be considered. Defendant used a lethal weapon in an incredibly dangerous manner when he shot multiple times into the darkness as fast as he could. Defendant's property was near a busy highway. His property had a motel sign. There were no other signs designating his property as private, nor were there any gates up. The motel property was open to pedestrians. Given these circumstances, Defendant shot four times, across a motel parking lot in the direction of other structures. After Defendant shot and killed Jane Doe, he told law enforcement, "I didn't know who this was, and I thought, well it's not Melanie." PSR ¶ 11. Defendant's criminal conduct was unbelievably reckless and dangerous.

The United States submits that an upward departure of four levels, similar to that under §2A1.4(B) is reasonable. If the Court were to grant the United States's request for a two-level enhancement for obstruction, Defendant's total offense level would be 20 and his total guideline range would be 33 to 41 months. Assuming this guideline range, the United States is requesting an upward departure of four levels, which would result in a guideline range of 51 to 63 months. The United States is asking for a 60 month sentence, which is within this range. This is not a typical involuntarily manslaughter case and the guidelines do not include the contemplate the manner in which Defendant used his firearm, and the extent to which its use endangered others.

## CONCLUSION

WHEREFORE, the United States moves for an upward variance and/or departure and requests the Court sentence Defendant to imprisonment for 60 months, a $100 special penalty assessment, restitution in the amount of $1,800, and supervised release for three years.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
Acting United States Attorney

*Electronically filed on 08/29/22*
NOVALINE D. WILSON
KYLE T. NAYBACK
Assistant United States Attorneys
Post Office Box 607
Albuquerque, New Mexico  87102
(505) 224-1419

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause a copy of this filing to be sent to counsel for Defendant.

 /s/
NOVALINE D. WILSON
Assistant United States Attorney